**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ANTHONY PAGLIARONI, VICKI O'BRIEN, JOHN COSTELLO and CATHERINE LYNCH on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> MASTIC HOME EXTERIORS, INC. and DECEUNINCK NORTH AMERICA, LLC, <br><br> Defendants. | Civil Action No. 12-10164-DJC |

**MEMORANDUM AND ORDER**

CASPER, J.                                                                    February 15, 2018

## I.      Introduction

Anthony Pagliaroni ("Pagliaroni"), Vicki O'Brien ("O'Brien"), Catherine Lynch ("Lynch") and John Costello ("Costello") (collectively, "Plaintiffs") seek damages as well as declaratory and injunctive relief from Defendants Mastic Home Exteriors ("Mastic") and Deceuninck North America ("DNA") arising from damage to their decks allegedly caused by a design defect in the Oasis decking formula. Plaintiffs assert claims for breach of warranty, negligence, negligent misrepresentation and unjust enrichment and violation of certain state consumer protection laws. D. 53. Mastic and DNA have both filed for summary judgment. D. 266 (Mastic), 270, 272, 274, 276 (DNA). For the reasons stated below, the Court ALLOWS IN

1

PART AND DENIES IN PART Mastic's motion, D. 266, and ALLOWS DNA's motions for summary judgment, D. 270, 272, 274, 276.

## II.     Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (quoting Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in her pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" Id. (quoting Anderson, 477 U.S. at 249) (alteration in original). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

## III.     Factual Background

Both Mastic and DNA submitted statements of material fact. See D. 269; D. 271 at 2-6; D. 273 at 2-4; D. 275 at 2-3; D. 277 at 2-3. Plaintiffs, however, did not respond to Defendants' statements of material facts in a manner that indicates what, if any, material facts they dispute. Where there has been no such response to the material facts as presented by movants, they may be

deemed admitted. Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97, 102 (1st Cir. 2003) (quoting D. Mass. L.R. 56.1)); see Kirtz v. Wells Fargo Bank N.A., No. CIV.A. 12-10690-DJC, 2014 WL 3869997, at *1, *1 n.1 (D. Mass. Aug. 5, 2014). Nearly two weeks after the Court heard the parties' arguments on the motions for summary judgment and over a month after Plaintiffs had filed their oppositions to the motions for summary judgment, Plaintiffs moved for leave to file an amended statement of material facts to cure this deficiency, raised by defense counsel at the motion hearing. D. 302. While deeming facts to which a nonmovant does not respond admitted for purposes of a motion for summary judgment is a matter of discretion, see Butters v. Wells Fargo Advisors, LLC, No. 10-cv-10072-MLW, 2012 WL 5959986, at *2 (D. Mass. Nov. 27, 2012), it is the nonmovant's responsibility "to focus the district court's attention on what is, and what is not, genuinely controverted," Mariani-Colon v. Dep't of Homeland Sec. ex rel. Chertoff, 511 F.3d 216, 219 (1st Cir. 2007) (citations omitted); see Zimmerman v. Puccio, 613 F.3d 60, 62–63 (1st Cir. 2010), and to do so in a timely fashion. Accordingly, Plaintiff's late filed motion to amend their statement of facts, D. 302, is DENIED. Plaintiffs' operative statement of material facts itself, D. 284; D. 288, fails to dispute the material facts at issue in this case. To the extent, however, Plaintiffs rely in their opposition upon admissible evidence in the record to dispute material facts in this case, the Court has considered such evidence.

DNA designed and manufactured Oasis decking ("Oasis"), a deck product made of wood-polymer composite. D. 269, ¶ 1; D. 271 at 2; D. 273 at 2; D. 275 at 2; D. 277 at 2. Mastic, formerly known as Alcoa Home Exteriors, Inc., and owned by Ply Gem Industries, Inc. ("Ply Gem"), marketed and distributed Oasis. D. 269, ¶ 2. Mastic sold Oasis to wholesalers and distributors, who would in turn resell Oasis to other distributors, contractors and retailers, who in turn would sell Oasis to end-users or consumers. D. 271 at 2; D. 273 at 2; D. 275 at 2; D. 277 at 2. Mastic

offered an express warranty that Oasis "would be free from defects in material and worksmanship for twenty-five years" (the "Limited Warranty"). D. 269, ¶ 4. The Limited Warranty included a disclaimer that limited the remedies for a warranty claim to replacement of defective Oasis decking or refund of the value of the defective product. D. 269, ¶ 5. The Limited Warranty also provided that Mastic was not responsible for consequential, special or incidental damages arising out of the purchase of Oasis and that it was the exclusive warranty for Oasis. D. 269, ¶¶ 6-7.

Pagliaroni lived in Swansea, Massachusetts. D. 269, ¶ 10; D. 271 at 2. Prior to purchasing Oasis, a contractor recommended it to Pagliaroni and gave him a brochure and sample. D. 271 at 2-3. The brochure referred to the Limited Warranty. D. 271 at 3. Pagliaroni built his Oasis deck in the summer of 2006. D. 269, ¶ 11. D. 271 at 3. Pagliaroni noticed cracks in his Oasis deck for the first time in August 2007, approximately one year after it had been constructed and installed. D. 269, ¶ 16; D. 271 at 3. In addition to cracking, Pagliaroni also saw mold growth and swelling and warping of the Oasis deck boards, which concerned him. D. 269, ¶¶ 17-18; D. 271 at 3-4. As the cracking continued to worsen, Pagliaroni's contractor inspected the deck in 2007 and concluded that the problems related to the product rather than the installation. D. 269, ¶¶ 19-20; D. 271 at 4. Pagliaroni then attempted to contact Mastic about the issues with his Oasis deck later in 2007, but did not speak to anyone. D. 269, ¶ 21; D. 271 at 4. In early 2010, Pagliaroni or his wife contacted Mastic again, and in April 2010, Mastic sent Pagliaroni a letter informing him of the warranty process and enclosing a warranty claim form. D. 269, ¶¶ 22-23; D. 271 at 4. Pagliaroni submitted a warranty claim in April 2011. D. 269, ¶ 24; D. 271 at 4. Mastic approved Pagliaroni's warranty claim and offered reimbursement for the purchase price of his Oasis deck, but Pagliaroni rejected the offer. D. 269, ¶¶ 25-26; D. 271 at 5.

Lynch lives in Harpersfield, New York.  D. 269, ¶ 28; D. 275 at 2.  Lynch constructed her Oasis deck in or about September 2007.  D. 269, ¶ 29; D. 275 at 2.  Lynch reviewed the Limited Warranty prior to purchasing her Oasis deck and understood that it excluded labor.  D. 269, ¶¶ 35-36.  Lynch noticed cracking in her Oasis deck in April 2009, D. 275 at 3, and noticed cupping and warping in October 2011, D. 269, ¶ 39; D. 275 at 3, and submitted a warranty claim to Mastic on March 6, 2012, D. 269, ¶¶ 38-42; D. 275 at 3.  Mastic approved Lynch's warranty claim and offered reimbursement for the purchase price of her Oasis deck, but Lynch rejected the offer.  D. 269, ¶¶ 43-44; D. 275 at 3.

Costello lives in Portland, Oregon.  D. 269, ¶ 46.  In March 2008, Costello engaged a builder to build a deck using Oasis.  D. 269, ¶¶ 47-48; D. 273 at 2.  The builder purchased the Oasis for Costello's deck from ABC Suppliers.  D. 269, ¶ 53.  Costello knew of the Limited Warranty "that had conditions regarding coverage."  D. 269, ¶ 52.  Costello noticed problems with his Oasis deck for the first time between Spring 2009 and 2010, when he saw delamination and warping of the deck boards.  D. 269, ¶ 54; D. 273 at 3.  Costello contacted Mastic, which approved his warranty claim and offered reimbursement of the purchase price of his Oasis deck, but Costello rejected the offer.  D. 269, ¶¶ 59-61; D. 273 at 3-4.

O'Brien lives in Buffalo, Minnesota.  D. 269, ¶ 63.  O'Brien hired a builder to construct a deck for her in 2006.  D. 269, ¶¶ 64-65.  O'Brien reviewed two Oasis brochures before she purchased Oasis decking.  D. 269, ¶ 66.  When making this decision, O'Brien paid particular attention to the Limited Warranty, which was described and referred to in the brochures.  D. 269, ¶¶ 67-68.  O'Brien was aware "that there might be exclusions from coverage under the warranty because it was a limited warranty."  D. 269, ¶ 69.  O'Brien noticed problems for the first time between late 2010 and spring 2011, when she noticed mold on her Oasis deck.  D. 269, ¶ 70; D.

277 at 3. O'Brien submitted a warranty claim to Mastic on or about June 12, 2012. D. 269, ¶ 73; D. 277 at 3. Mastic inspected O'Brien's Oasis deck on August 28, 2012. D. 269, ¶ 74; D. 277 at 3. On September 4, 2012, Mastic denied O'Brien's warranty claim because the cracking in her Oasis deck was caused by the manner in which the deck was screwed down during installation rather than a defect covered by the Limited Warranty. D. 269, ¶¶ 75-76; D. 277 at 3.

## IV. Procedural History

On January 27, 2012, Pagliaroni filed this putative class action. D. 1. In the second amended complaint, filed on May 29, 2013, Plaintiffs[1] asserted claims against Mastic for breach of express warranty, negligent misrepresentation and violation of various consumer protection laws under Massachusetts, Minnesota and New York law, and against both Defendants for breach of implied warranty, unjust enrichment, negligence, and declaratory and injunctive relief. D. 53 ¶¶ 137-218. On September 22, 2015, the Court denied Plaintiffs' motion for class certification, D. 231, so only the individually named plaintiffs remain. The Court heard the parties on the pending motions and took these matters under advisement. D. 301.

## V. Discussion

### A. **Statute of Limitations**

#### 1. *Pagliaroni*

##### a) Pagliaroni's Implied Warranty Claim Is Time-Barred

Mastic argues that Pagliaroni's claims for breach of implied and express warranties are time-barred. DNA makes the same argument for Pagliaroni's breach of implied warranty claim

---

[1] In addition to the four named Plaintiffs, plaintiff Melisa Burnett was also listed as a putative class representative in the SAC. D. 53. Burnett voluntarily dismissed her claims against Defendants with prejudice on June 12, 2013. D. 54.

against it.  Plaintiffs counter that Pagliaroni's claims are not time-barred because the limitations period was tolled by Mastic and DNA's fraudulent concealment of its knowledge relating to Oasis's susceptibility to premature cracking, pointing to Mastic testing in December 2006 which revealed "catastrophic failures" in Oasis.  D. 291 at 5.

Claims for breach of warranty under Massachusetts law are subject to a four-year statute of limitations under contract-based theories, or three years for tort-based theories.  Mass. Gen. L. c. 106, § 2-725(1); see Bay State-Spray & Provincetown S.S., Inc. v. Caterpillar Tractor Co., 404 Mass. 103, 110 (1989).  Here, the Court applies a contract-based theory because the claims allegedly arise from an alleged breach of a warranty agreement.  The original complaint in this case, including Pagliaroni's claim, was not filed until January 27, 2012.  D. 1.  Defendants argue that the statute of limitations on Pagliaroni's claims began to run in summer 2006 when his deck was installed.  D. 269, ¶ 11.

A contract-based breach of warranty claim "accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered."  Mass. Gen. L. c. 106, § 2-725(2). First, "an implied warranty, by its nature, does not extend to future performance."  Howard v. IKO Mfg., Inc., 2011 Mass. App. Div. 191, 2011 WL 2975813, at *3 (2011) (citing New England Power Co. v. Riley Stoker Corp., 20 Mass. App. Ct. 25, 27 n.4 (1985)).  Therefore, Pagliaroni's breach of implied warranty claims accrued from the date of delivery in 2006 and expired prior to the filing of the complaint in 2012.  Accordingly, the Court allows Defendant's motions as to Pagliaroni's implied warranty claims against Mastic (Count II) and DNA (Count III) as time-barred.

b)      Pagliaroni's Breach of Express Warranty Claim Is Time-Barred

As to the breach of express warranty claim, Mastic argues this warranty also does not extend to future performance, although on its face the warranty's promise that Oasis decking would be free "from defects in material and worksmanship in the course of manufacture" over a period of twenty five years suggests otherwise.  D. 267-2 at 4.  The Court, therefore, looks to the date when breach was or should have been discovered.  In <u>Coady v. Marvin Lumber & Cedar Co.</u>, 167 F. Supp. 2d 166, 168 (D. Mass. 2001), a homeowner brought an action against the manufacturer of windows and doors that were installed in his house in 1985.  <u>Id.</u>  The plaintiff began experiencing problems with the windows in 1987.  <u>Id.</u>  The court held that his claims for breaches of implied and express warranty were time-barred because they began to accrue either at the time of purchase in 1985 or in 1987 when he first discovered the damage that "was immediately indicative of a breach of warranty."  <u>Id.</u> at 170-71.  The court noted that this discovery was reinforced by "Coady's repeated conversations with Marvin representatives."  <u>Id.</u>

Similarly, in this case, Pagliaroni first noticed damages to the deck including cracking, mold and expanding boards, D. 269, ¶ 17, had a contractor identify that the issue was not installation-related, <u>id.</u>, ¶ 20, and began attempting to contact Mastic about these issues in 2007, <u>id.</u>, ¶ 21.  Accordingly, as in the <u>Coady</u> case, even if Pagliaroni's express warranty with Mastic was contingent on future performance, Plaintiffs have not raised any genuine issue of material fact that his awareness of the defects was later than 2007.  While Plaintiffs rely upon Pagliaroni's description in his deposition of the damage to the deck in 2007 as "minor changes," D. 284, ¶ 17; D. 268-1 at 9, Pagliaroni was responding to a question confirming that he was dissatisfied with the deck beginning in the summer of 2007, and that such dissatisfaction included "minor changes" including reduced gaps and "a little bit of splitting by screws."  D. 268-1 at 8-9.  This distinction

does not affect the undisputed fact that this defect, whatever its extent as initially observed, was in 2007, which means the claims began to accrue then. See Coady, 167 F. Supp. 2d at 172 (noting "[k]nowledge of the extent of the injury does not determine the triggering date" (citation omitted)); Minasidis v. BMW of N. Am., LLC, 83 Mass. App. Ct. 1123, 2013 WL 1403302, at *2 (2013) (applying earlier date when plaintiff first expressed concern "about electrical issues" at his "service date put[ting] him on notice that there were issues with the car he had purchased and that he might have a viable claim against the defendants").

Accordingly, Pagliaroni's claim is time barred. The Court ALLOWS Mastic's motion as to Pagliaroni's breach of express warranty claim (Count I).

### c) Pagliaroni's Other Claims Are Also Time-Barred

Mastic argues that Pagliaroni's claims for violation of Mass. Gen. L. c. 93A, negligence and negligent misrepresentation are similarly time-barred, but on the basis of the discovery rule identifies these claims as accruing by August 2007 when he noticed problems with the deck that caused him to ask a contractor to inspect the deck and ultimately contacted Mastic. D. 269, ¶¶ 16-21. DNA argues that Pagliaroni's negligence and unjust enrichment claims are time-barred on the same basis. Plaintiffs contend on similar grounds that these claims[2] are not time-barred because of Mastic and DNA's fraudulent concealment of its knowledge relating to Oasis' susceptibility to premature cracking.

---

[2]Plaintiffs do not oppose the Defendants' motions for summary judgment on Pagliaroni's negligence claims, D. 290 at 2; D. 291 at 2 n.1.

Pagliaroni's Chapter 93A claim is governed by a four-year statute of limitations. Mass. Gen. L. c. 260, § 5A. His negligence, negligent misrepresentation and unjust enrichment claims are governed by a three-year statute of limitations. Mass. Gen. L. c. 260, § 2A.

Under Massachusetts law "[t]he limitations period begins to run 'when a plaintiff discovers, or any earlier date when she should reasonably have discovered, that she has been harmed or may have been harmed by the defendant's conduct.'" Epstein v. C.R. Bard, Inc., 460 F.3d 183, 187 (1st Cir. 2006) (quoting Bowen v. Eli Lilly & Co., 408 Mass. 204, 205-6 (1990)). Under the discovery rule, "the limitations period is tolled until 'events occur or facts surface which would cause a reasonably prudent person to become aware that she or he had been harmed.'" Id. (quoting Felton v. Labor Relations Comm'n, 33 Mass. App. Ct. 926, 927 (1992)). This discovery must include two components: "not only knowledge that one has been injured but knowledge of its cause—that plaintiff 'has been harmed as a result of the defendant's conduct.'" Fidler v. Eastman Kodak Co., 714 F.2d 192, 198 (1st Cir. 1983) (quoting Olsen v. Bell Tel. Labs., Inc., 388 Mass. 171, 175 (1983)).

As a general matter, "[a]pplication of the discovery rule ordinarily involves questions of fact and, therefore, "in most instances will be decided by the trier of fact." Genereux v. Am. Beryllia Corp., 577 F.3d 350, 360 (1st Cir. 2009) (quoting In re Mass. Diet Drug Litig., 338 F. Supp. 2d 198, 204 (D. Mass. 2004)). As discussed above, however, it is undisputed that Pagliaroni had discovered the defects in his Oasis deck in August 2007. Fraudulent concealment requires a plaintiff to show that the liable party concealed "the cause of such action from the knowledge of the person entitled to bring it." Mass. Gen. L. c. 260, § 12. A cause of action cannot be "concealed from one who has knowledge of the facts that create it." White v. Peabody Const. Co., Inc., 386 Mass. 121, 133 (1982) (quoting Stetson v. French, 321 Mass. 195, 198 (1947)). In this case,

Pagliaroni had knowledge or the reasonable ability to acquire knowledge that formed the basis of his claims in 2007 when he first discovered swelling and cracking in his deck. He had knowledge that the deck had begun to swell and crack, and knew that Mastic, as the seller and distributor, was the appropriate entity to contact to begin the process of filing for a warranty claim. The discovery rule requires that the claim accrue from the date the defendant first knew or reasonably should have known about the damage and that the defendant was the likely cause thereof. See, e.g., Oliver v. Bank of Am., N.A., No. 12-12186-PBS, 2013 WL 3732877, at *4 (D. Mass. June 17, 2013) (dismissing Chapter 93A claim as time-barred where plaintiff noticed cracks in the basement floor of the house he had purchased outside the limitations period, but only later complained and sued when the cracks became bigger). Accordingly, the Court allows Defendants' motions as to Pagliaroni's negligence claims against both Mastic (Count VI) and DNA (Count VII), his unjust enrichment claim against DNA and Mastic (Count IV) and negligent misrepresentation (Count V) and Chapter 93A (Count VIII) claims against Mastic as time-barred.

### 2. *O'Brien's Claims For Breach Of Implied Warranty Are Time-Barred*

Defendants argue that O'Brien's claim for breach of implied warranty should be dismissed as time-barred. Claims for breach of implied warranty under Minnesota law are subject to a four-year statute of limitations. See Daigle v. Ford Motor Co., No. 09-cv-3214-MJD, 2012 WL 3113854, at *3 (D. Minn. July 31, 2012). O'Brien's deck was installed in 2006. D. 269, ¶ 63. O'Brien joined the case in the second amended complaint filed on May 29, 2013. D. 53. "A breach of implied warranty occurs, and the claim accrues, 'when tender of delivery is made.'" Highway Sales, Inc. v. Blue Bird Corp., 559 F.3d 782, 789 (8th Cir. 2009) (quoting Minn. Stat. § 336.2–725(2)). Therefore, Plaintiffs must show that equitable tolling or equitable estoppel apply for O'Brien's claim to survive.

Plaintiffs argue that when Mastic told O'Brien the damage to her Oasis decking was not caused by the manufacturer in response to her warranty claim, they did so knowingly to conceal their responsibility. D. 291 at 6-7. Further, Plaintiffs point generally to Mastic's "marketing literature," in which they allege Mastic claimed Oasis was a high-quality product that would never split or cup. Id.

"Under the doctrine of equitable estoppel, if a buyer delays filing suit as a result of reasonable and detrimental reliance on a seller's assurances it will repair the defective goods, the limitations period is tolled during that period of delay." Highway Sales, Inc., 559 F.3d at 789. In Highway Sales, the court rejected plaintiffs' argument that they were equitably estopped from filing the complaint earlier, explaining that even if there were several communications wherein defendant refused to refund plaintiffs but assured they were "committed to working" with them constituted ongoing assurances, there was "no evidence in the record from which a reasonable factfinder could conclude plaintiffs reasonably and detrimentally relied on" the defendant's promises to make the repairs. Highway Sales, 559 F.3d at 790. Plaintiffs fails to establish equitable estoppel here. The generalized puffery that Plaintiffs point to in the marketing materials by Mastic or DNA are not equivalent to the individualized post-purchase and post-defect communications necessary for equitable estoppel. See, e.g., U.S. Leasing Corp. v. Biba Info. Processing Servs., Inc., 436 N.W.2d 823, 826 (Minn. Ct. App. 1989); Lake Superior Ctr. Auth. v. Hammel, Green & Abrahamson, Inc., 715 N.W.2d 458, 473 (Minn. Ct. App. 2006). Furthermore, Plaintiffs have not shown that O'Brien's decision not to file suit was made in reliance on those materials. See Highway Sales, 559 F.3d at 790. Accordingly, O'Brien's claim is not tolled by equitable estoppel.

Plaintiffs alternatively contend that O'Brien's claim is not time-barred because of Mastic and DNA's allegedly fraudulent concealment of its knowledge relating to Oasis' susceptibility to premature cracking. To show fraudulent concealment justifying equitable tolling, Plaintiffs must show that Defendants concealed "the very existence of the facts which establish the cause of action" and that O'Brien was "actually unaware" of those facts. Hydra–Mac, Inc. v. Onan Corp., 450 N.W.2d 913, 918-19 (Minn. 1990). The Court is aware that "summary judgment is appropriate only where a reasonable juror could not find fraudulent concealment." Marvin Lumber & Cedar Co. v. PPG Indus., Inc., 223 F.3d 873, 877 (8th Cir. 2000) (citing Miles v. A.O. Smith Harvestore Prods., Inc., 992 F.2d 813, 817 (8th Cir.1993)). It is also true, however, that Plaintiffs merely pointing to Defendants' "mere silence is not sufficient. [T]he essence of fraudulent concealment, then, is that the defendant has engaged in some behavior that has had the purpose and effect of concealing the presence of a cause of action from the plaintiff." Thunander v. Uponor, Inc., 887 F. Supp. 2d 850, 867 (D. Minn. 2012) (second alteration in original) (citations and quotations omitted).

That is, even on this undisputed record, Plaintiffs have failed to show fraudulent concealment for at least two reasons. First, Plaintiffs have not shown, and do not attempt to identify which facts are those that necessarily show the purpose and effect of concealing the presence of a cause of action from O'Brien, nor do they show that O'Brien was unaware of those facts. "Under Minnesota law, an implied warranty of merchantability requires that goods be fit for the ordinary purposes for which such goods are used. This warranty is breached when the product is defective to a normal buyer making ordinary use of the product." Daigle v. Ford Motor Co., 713 F. Supp. 2d 822, 826 (D. Minn. 2010) (citations and quotations omitted). None of the facts Plaintiffs reference are necessary to make out this claim. The facts O'Brien required to bring

13

a claim for breach of implied warranty were known to her or reasonably available – that the deck was defective, that Mastic had sold and/or distributed the deck and that DNA had manufactured the deck.

Second, a mere showing of non-disclosure does not show fraudulent concealment. <u>See Marvin Lumber & Cedar Co.</u>, 223 F.3d at 877-78 (rejecting an argument by plaintiff that seller's failure to fulfill its representations about the quality of the product, including "long-term research supporting [the product's] effectiveness, [its] certification by an industry standards organization," and misleading plaintiff "about the cause of [the] rot problems" were "evidence of affirmative fraud"); <u>Thunander</u>, 887 F. Supp. 2d at 868. In other words, a defendant is "not required to inform [plaintiff] of the facts that reflected poorly on [the product's] performance." <u>Marvin Lumber & Cedar Co.</u>, 223 F.3d at 878 (citing <u>Metropolitan Fed. Bank of Iowa, F.S.B. v. W.R. Grace & Co.</u>, 999 F.2d 1257, 1261 (8th Cir. 1993)). For all of these reasons, Plaintiffs have failed to show fraudulent concealment for purposes of tolling the statute of limitations for O'Brien's breach of implied warranty claims.

Accordingly, the Court ALLOWS both motions as to O'Brien's claims for breach of implied warranty against Mastic (Count II) and DNA (Count III) as these claims are time-barred.

> 3. *Lynch*

>> a) <u>Lynch's Claims For Breach Of Implied Warranty Are Time-Barred</u>

Defendants argues that Lynch's claims for breach of implied warranty should be dismissed as time-barred. Claims for breach of implied warranty under New York law are subject to a four-year statute of limitations. <u>See Orlando v. Novurania of Am., Inc.</u>, 162 F. Supp. 2d 220, 223 (S.D.N.Y. 2001). Lynch's deck was installed in 2007. D. 269, ¶ 29. Lynch joined the case in the second amended complaint, filed on May 29, 2013. D. 53. New York law, similar to

Massachusetts law, applies the same date of tender rule, only extending the date of accrual for those warranties that "explicitly extend[] to future performance of the goods and discovery of the breach must await the time of such performance." N.Y. U.C.C. § 2-725(2). Plaintiffs have not offered any reason why 2007 should not be considered as the year Lynch's claim began to accrue. Accordingly, the Court allows Mastic's motion as to Lynch's claim for breach of implied warranty (Count II) and allows DNA's motion as to same (Count III) as time-barred.[3]

b)    <u>Lynch's Consumer Protection Claim Is Time-Barred</u>

Mastic argues that Lynch's claim for deceptive acts and practices under New York law, N.Y. Gen. Bus. Law § 349 ("GBL 349"), is time-barred. Plaintiffs assert the same fraudulent concealment and equitable tolling argument with respect to Lynch's claim, asserting that Mastic's knowledge of Oasis' catastrophic failure and contrary marketing materials and other communications prevented her from learning the operative facts. Plaintiffs also argue that Lynch's GBL 349 claim did not accrue at the time Mastic states because not all the elements of the cause of action had occurred. Specifically, Plaintiffs contend that the GBL 349 claim requires as an element that Lynch's expectations as a consumer were not met by the product, and that that did not occur until her Oasis decking started to cup and warp in 2011.

Claims brought under GBL 349 are subject to a three-year statute of limitations. Bristol Vill., Inc. v. Louisiana-Pac. Corp., 170 F. Supp. 3d 488, 497 (W.D.N.Y. 2016) (citing Gaidon v. Guardian Life Ins. Co. of Am., 96 N.Y.2d 201, 208 (N.Y. 2001)). The cause of action accrues

---

[3] Having dismissed Pagliaroni, O'Brien and Lynch's claims for breach of implied warranty as time-barred, the Court does not reach the arguments that Mastic separately made that its express limited warranty excluded any implied warranty, thereby barring each of these three claims. D. 267 at 15-19.

"when all of the factual circumstances necessary to establish a right of action have occurred." Gaidon, 96 N.Y.2d at 210. This has occurred "when plaintiff has been injured by a deceptive act or practice violating section 349." Id. (citation omitted). The moment of injury is not necessarily measured by entering into a contract or delivery of goods, but instead by the date of the operative event that is "the gravamen of the complaints of [GBL 349] violations." Id. at 211. In Gaidon, 96 N.Y.2d at 211-12, that date was not when the defendant, an insurance company, entered into a contract with the plaintiffs. Rather, the operative date was when the defendant demanded additional premiums which on its face the insurance policy had not disclosed or represented to plaintiffs, instead promising a "vanishing date" when premiums would end, thereby creating "unrealistic expectations" as to those additional premiums. Id. at 211-212. In the context of a claim alleging a violation of GBL 349 with respect to a defective product, the date generally applied is the date of receipt for the defective product. See, e.g., Bristol Vill., Inc., 170 F. Supp. 3d at 499 (applying date of receipt of lumber plaintiffs allege was inherently defective); Marshall v. Hyundai Motor Am., 51 F. Supp. 3d 451, 461-62 (S.D.N.Y. 2014) (applying date of receipt to defective brake system because "[d]efendant's misrepresentations or omissions were about the nature of the product itself" and the alleged defect would have existed at the time of purchase, so "[p]laintiffs [could not] claim that their injury occurred only when the brakes failed or when they had to pay for repairs on the faulty brakes"); Statler v. Dell, Inc., 775 F. Supp. 2d 474, 484 (E.D.N.Y. 2011) (applying same analysis with respect to faulty capacitors in computers purchased by plaintiffs). Lynch received her decking six years before filing suit. Furthermore, even if the

Court considered the "gravamen" of Lynch's claim to have arisen when she noticed cracking in 2009, D. 284, ¶ 35, the claim would still be time-barred.[4]

Accordingly, the Court allows Mastic's motion as to Lynch's GBL 349 claim (Count XI) as time-barred.

### 4. Costello's Breach of Implied Warranty Claim as to Mastic Survives

DNA argues that all of Costello's claims are time-barred because they are subject to Oregon's two-year statute of limitations for products liability actions. D. 273 at 5. Plaintiffs argue there is a dispute of material fact relating to when Costello's claim for breach of implied warranty accrued, because DNA has not met its burden of showing that Costello discovered the relationship between the damage to his Oasis decking and DNA's wrongdoing. Even if there is evidence of such a relationship, Plaintiffs argue DNA's motion should fail because Costello did not notice substantial failures until 2011. Plaintiffs also assert the same fraudulent concealment and/or equitable tolling argument with respect to this claim, asserting that DNA's knowledge of Oasis' catastrophic failure and contrary marketing materials and other communications prevented Costello from learning the operative facts of the claim.

---

[4]The cases that Plaintiffs rely upon to contend otherwise are inapposite. See Mark v. Eshkar, 598 N.Y.S.2d 255, 256 (N.Y. App. Div. 1993) (determining accrual date of a negligence claim arising from construction damage to be the date when "the new structural cracks appeared"); Pub. Serv. Mut. Ins. co. v. 341-347 Broadway, LLC, 946 N.Y.S.2d 149, 150 (N.Y. App. Div. 2012) (applying Mark to negligent foundation repair); Atl. Exp. Transp. Corp. v. Weeks Marine, Inc., 869 N.Y.S.2d 326, 328-29 (N.Y. Gen. Term 2008), aff'd as modified, 892 N.Y.S.2d 437 (N.Y. App. Div. 2009) (applying Mark to negligent drilling, blasting, and dredging claim); Meron v. Ward Lumber Co., Inc., 779 N.Y.S.2d 597, 598 (N.Y. App. Div. 2004) (applying seller's 20-year warranty as a contract term enforceable by the purchaser to extend limitations period beyond default of four years).

Oregon law imposes a two-year statute of limitations on all claims in a products liability action from the date "the plaintiff discovers, or reasonably should have discovered, the personal injury or property damage and the causal relationship between the injury or damage and the conduct of the defendant." O.R.S. § 30.905(1). That discovery must occur before the later of either (a) ten years from the date when the product was first purchased for use or consumption or (b) the expiration of any statute of repose in the state where the product was manufactured. Or. Rev. Stat. § 30.905(2). Costello filed his claims in this case on May 29, 2013. D. 53. Oregon law defines a 'product liability civil action' controlled by Section 30.905 as "a civil action brought against a manufacturer, distributor, seller or lessor of a product for damages for personal injury, death or property damage arising out of: (1) [a]ny design, inspection, testing, manufacturing or other defect in a product." LaDue v. City of Talent, No. 1:14-cv-01421-CL, 2016 WL 7840214, at *4 (D. Or. Nov. 17, 2016), report and recommendation adopted, No. 1:14-cv-01421-CL, 2017 WL 217648 (D. Or. Jan. 18, 2017). A product liability civil action in this context includes all claims in the case arising out of the same allegations, the "gravamen" of which "falls squarely within the ambit of [O.R.S. 30.905(1)]." Weston v. Camp's Lumber & Bldg. Supply, Inc., 205 Or. App. 347, 357, opinion adhered to as modified on reconsideration, 206 Or. App. 761 (2006) (quoting Simonsen v. Ford Motor Co., 196 Or. App. 460, 479 (2004)).

Oregon law has a similar discovery rule under which "a plaintiff's claim against a particular defendant accrues when (1) the plaintiff knows, or a reasonable person should know, that there is enough chance that the defendant had a role in causing the plaintiff's injury to require further investigation; and (2) an investigation would have revealed the defendant's role." Kildow v. Breg, Inc., 796 F. Supp. 2d 1295, 1298 (D. Or. 2011) (quoting T.R. v. Boy Scouts of Am., 344 Or. 282, 296 (2008)).

18

In this case, the injury supporting Costello's claim began to run when Costello became aware of deterioration in March 2009, mold growth in April 2009 and cracking and discoloration in his Oasis decking in or about March 2010. See D. 53, ¶ 71; D. 273 at 5. Plaintiffs point to 2011 as a later time when Costello observed more substantial failures in the decking, D. 290 at 10; see D. 269, ¶ 55, when they argue the limitations period began to run. Similar to the analysis under Massachusetts law, the discovery rule under Oregon law does not consider the extent of subsequent damage, but presence of observable damage that puts plaintiff on notice of the injury and the reasonable capability to investigate and discover the defendant's role in the damage.

Plaintiffs also argue that even if there is no genuine issue of material fact that Costello discovered damage to his Oasis decking earlier, there remain genuine issues of material fact as to whether Costello was aware of DNA's role in manufacturing his Oasis decking. D. 290 at 9-10. As noted with Pagliaroni's claim under Massachusetts law, the discovery rule is marked by the plaintiff's knowledge or reasonable efforts to obtain knowledge of the damage and the likely cause of the damage at the time the claim accrued. Kildow, 796 F. Supp. 2d at 1298.

However, the record on this point is too bare to conclude that there is no genuine issue of fact as to whether Costello could have or should have inquired who manufactured his Oasis decking earlier than he did. While DNA points to Ply Gem's response to Costello's warranty claim in 2012, in which Mastic referred Costello to a representative of DNA, providing contact information for DNA, see D. 294-3 at 7; D. 278-17, that does not resolve the dispute about whether Costello's inquiry was reasonable upon discovering the defect. "The party who asserts the statute of limitations defense must prove that an investigation would have disclosed those facts." T.R., 344 Or. at 294 (reversing lower appellate court's application of the discovery rule because it had failed to appropriately consider the plaintiff's capability to discover the defendant's role in her

injury through a reasonable investigation); see Cole v. Sunnyside Marketplace, LLC, 212 Or. App. 509, 522 (2007) (concluding that the defendant's "argument reduce[d] to the assertion that plaintiff could have asked for the information earlier than she did. That, however, is not sufficient to trigger the statute of limitations"). Even if there is a genuine issue of material fact as to whether Costello's duty to investigate had been triggered, and whether that investigation would have revealed DNA's association with the harm to his deck, DNA's motion for summary judgment as to Costello's claim for breach of implied warranty under Count III succeeds because of lack of showing of privity as discussed below.

B.     **Costello's Privity with Mastic and DNA**

Both Mastic and DNA argue that Costello's claim for breach of implied warranty fails because he purchased his Oasis decking through a contractor from another distributor, ABC Suppliers, not Mastic. Plaintiffs argue that privity exists because all Plaintiffs purchased their decking through Defendants' agent-resellers, and that Mastic and DNA had executed a Sales and Distribution Agreement that made DNA the exclusive distributor of Oasis decking but for a designated territory where Mastic's own distributors could sell and resell Oasis. Thus Plaintiffs argue privity is satisfied by the agency relationship between the sellers and manufacturer.

Under Oregon law, a plaintiff claiming breach of implied warranty who only seeks damages for economic loss "must demonstrate privity of contract between themselves and [defendant]." McFadden v. Dryvit Sys., Inc., No. 04-cv-103-ST, 2004 WL 2278542, at *6 (D. Or. Oct. 8, 2004), report and recommendation adopted, No. 04-cv-103-ST, 2004 WL 2852554 (D. Or. Dec. 10, 2004) (citing Davis v. Homasote Co., 281 Or. 383, 386 (1978) (en banc)). Economic loss "describes financial losses such as indebtedness incurred and return of monies paid, as distinguished from damages for injury to person or property." Portland Trailer & Equip., Inc., v.

20

<u>A-1 Freeman Moving & Storage, Inc.</u>, 166 Or. App. 651, 655 (2000).  When a party seeks to implicate a third party's rights, "Oregon law defines privity quite narrowly, requiring actual control."  <u>Skoog v. Cty. of Clackamas</u>, 469 F.3d 1221, 1230 (9th Cir. 2006) (issue preclusion context).

Plaintiffs argue that Oregon law does not require privity for a claim for breach of implied warranty arising from the Oregon Consumer Warranty Act, O.R.S. 72.8010 *et seq.*, under which they argue Costello's claim was brought, and therefore Mastic's authorities relate only to commercial contracts and are inapposite.  Plaintiffs' own complaint, however, does not reference the Oregon Consumer Warranty Act, and in fact invokes the UCC statutes adopted by Massachusetts, Minnesota, New York and Oregon in its breach of implied warranty claims.  <u>See</u> D. 53, ¶¶ 156, 172.  Because the complaint only seeks damages for economic loss, which Plaintiffs do not dispute, the question of whether Costello's claim for breach of implied warranty must be dismissed turns on whether there is a genuine issue of material fact with respect to the existence of privity between Costello and DNA or Mastic, respectively.

As to DNA, there is no privity between an "ultimate purchaser" and "a manufacturer [where] the property was not purchased directly from the manufacturer but through an intermediate seller."  <u>Hupp Corp. v. Metered Washer Serv.</u>, 256 Or. 245, 247 (1970); <u>see</u> <u>Davis</u>, 281 Or. at 386.  Plaintiffs point to Mastic and DNA's Sales and Distribution Agreement and the deposition testimony of Scott Ricke, DNA's Fed. R. Civ. P. 30(b)(6) designee, D. 289-16, as evidence of a direct relationship that establishes privity because ABC Suppliers was a "valid" distributor for Mastic, thereby establishing a link.  D. 289-16 at 10; D. 290 at 11-14.  However, ABC Suppliers' role as a sub-distributor for Mastic makes it an intermediate seller, for whom DNA did not honor the express warranty, D. 289-16 at 7-8, and privity with the manufacturer is obviated.  Accordingly,

the Court ALLOWS DNA's motion as to Costello's claims for breach of implied warranty (Count III).

The question as to Mastic turns on any agency relationship between Mastic and ABC Suppliers. Oregon law defines an agency relationship as a "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control." Westrope v. Ringler Assocs. Inc., No. 3:14-cv-00604-ST, 2015 WL 632243, at *13 (D. Or. Feb. 12, 2015) (quoting RESTATEMENT (THIRD) OF AGENCY § 1.01 (2006)). The record appears only to reveal that ABC Suppliers was the seller, D. 269, ¶ 53, but no evidence that would establish as a matter of law that this distributor relationship was less than an agency relationship. On this record, there remains a question of fact as to whether Mastic and ABC Suppliers had an agency relationship establishing privity. Accordingly, the Court DENIES Mastic's motion as to Costello's breach of implied warranty claim (Count II).

## C. Lynch, O'Brien and Costello's Express Warranty Claims Against Mastic Survive

Mastic argues that Lynch, O'Brien and Costello's express warranty claims seek additional monetary remedies beyond a refund of their costs relating to their Oasis decking, D. 53, ¶ 149, and that the Limited Warranty made "replacement product or refund [of] the value of the products" the exclusive remedy, D. 269, ¶ 5. Plaintiffs argue that the Limited Warranty is unenforceable because it was not delivered to Plaintiffs after their respective purchases of Oasis decking, and, therefore, they cannot be limited in their remedies to a refund or its equivalent.

Under Oregon, New York and Minnesota law, all following the Uniform Commercial Code, unless "circumstances cause an exclusive or limited remedy to fail of its essential purpose,"

a seller of goods "may limit or alter the measure of damages recoverable under this Article" by limiting the remedies to return of the goods and repayment of the price or repair and replacement. Or. Rev. Stat. § 72.7190; see N.Y. U.C.C., § 2-719; Minn. Stat. § 336.2-719. "A remedy fails of its essential purpose if the circumstances existing at the time of the agreement have changed so that enforcement of the limited remedy would essentially leave plaintiff with no remedy at all." Bristol Vill., Inc., 170 F. Supp. 3d at 508 (quoting Xerox Corp. v. Graphic Mgmt. Servs., Inc., 959 F. Supp. 2d 311, 320 (W.D.N.Y. 2013)). In this case, Lynch, O'Brien and Costello were all aware of the Limited Warranty's existence, see D. 269, ¶¶ 35, 50-51, 66-68, and submitted claims under the Limited Warranty, D. 269, ¶¶ 42, 59, 73.

However, these facts do not resolve the antecedent question of when Lynch, O'Brien and Costello entered into their agreements with Mastic, and whether those agreements included the Limited Warranty. In most cases, advertisements do not constitute enforceable offers. See, e.g., McCabe v. ConAgra Foods, Inc., No. 16-CV-93 (ARR) (SLT), 2016 WL 8943310, at *4 (E.D.N.Y. Aug. 29, 2016). Furthermore, consumers are not considered to have accepted an offer until after the shipment of merchandise along with any additional promises or obligations. Brower v. Gateway 2000, Inc., 676 N.Y.S.2d 569, 571-72 (N.Y. App. Div. 1998). No evidence submitted by Defendants demonstrates whether the Limited Warranty was included as a part of the offer or acceptance. Instead, Defendants ask the Court to infer from the Plaintiffs' varying degrees of awareness and *post hoc* claims submitted by Plaintiffs under the express warranty that they had accepted its terms when they received their Oasis decking. This is not sufficient for summary judgment. See All Metro Glass, Inc. v. Tubelite, Inc., 227 F. Supp. 3d 1007, 1014-16 (D. Minn. 2016) (applying Minnesota law); First Sec. Mortg. Co. v. Goldmark Plastics Compounds, Inc., 862 F. Supp. 918, 934 (E.D.N.Y. 1994) (applying New York law); Frazier v. Consol. Equip. Sales,

Inc., 64 Or. App. 833, 840 (1983) (applying Oregon law). Accordingly, Mastic's motion is DENIED as to Lynch, O'Brien and Costello's express warranty claims (Count I).

### D. **O'Brien's Statutory Claims Fail**

Mastic argues that Counts IX (O'Brien's claim under Minnesota Unlawful Trade Practices Act ("MUTPA")) and X (O'Brien's claim under Minnesota False Statement in Advertising Act ("MFSAA")) both fail because neither statute provides a private right of action. Rather, O'Brien must satisfy the Minnesota Private Attorney General Act, Minn. Stat. § 8.31, which permits "any person injured" to step into the shoes of the attorney general alleging claims violating either the MUTPA or MFSAA, Thunander, 887 F. Supp. 2d at 877; see Khoday v. Symantec Corp., 858 F. Supp. 2d 1004, 1016 (D. Minn. 2012). The plaintiff must show that "their cause of action benefits the public." Ly v. Nystrom, 615 N.W.2d 302, 314 (Minn. 2000). Mastic argues that because class certification has been denied, O'Brien's remaining remedies, namely compensatory damages and injunctive or declaratory relief, do not provide this public benefit.

Plaintiffs argue that O'Brien's claim satisfies the public benefit requirement. They point to precedent where, even when the primary relief sought was compensatory damages, courts applying Minnesota law permitted such claims to proceed where defendants had misrepresented services and products to the public, even if the number of claimants was limited. D. 291 at 19-20.

"[P]laintiffs can establish a public benefit by challenging misrepresentations made to a significant segment of the public," Khoday, 858 F. Supp. 2d at 1017 (collecting cases), or by looking to whether the relief sought is only damages, or includes injunctive relief,[5] see Hudock v.

---

[5] As the Court elaborates below, Plaintiffs' claims for declaratory or injunctive relief fail, and, accordingly, cannot be considered as a part of O'Brien's support for Counts IX and X.

LG Elecs. U.S.A., Inc., No. 16-cv-1220 (JRT/FLN), 2017 WL 1157098, at *5 (D. Minn. Mar. 27, 2017). The absence of one of these factors does not necessarily preclude finding that a plaintiff's claim benefits the public. Id. This private standing rule is construed broadly to encourage "aggressive prosecution of statutory violations." Thunander, 887 F. Supp. 2d at 877 (quoting Kinetic Co. v. Medtronic, Inc., 672 F. Supp. 2d 933, 945 (D. Minn. 2009)).

In this case, however, O'Brien has not established that her claim serves a public interest. Courts considering this question have not extended private standing under Minn. Stat. § 8.31 to plaintiffs who seek only monetary damages relating to products that are no longer sold, advertised or otherwise at risk of affecting the public. See, e.g., Buetow v. A.L.S. Enters., Inc., 888 F. Supp. 2d 956, 961 (D. Minn. 2012) (finding no public benefit after denial of class certification reduced case to "a series of small claims for nominal damages"); Overen v. Hasbro, Inc., No. 07-cv-1430 (RHK/JSM), 2007 WL 2695792, at *3 (D. Minn. Sept. 12, 2007) (finding no public benefit where plaintiff only sought compensatory damages and product was no longer being sold or advertised); Pecarina v. Tokai Corp., No. 01-cv-1655 (ADM/AJB), 2002 WL 1023153, at *5 (D. Minn. May 20, 2002) (describing "essence of Plaintiffs' lawsuit" as "personal injury, involving allegations of negligence and products liability" that is intended "to compensate Plaintiffs for their injuries" and cannot be "craft[ed] . . . to bring it within the ambit of the Private AG Act"). Here, Mastic has discontinued sales or marketing of Oasis decking. See D. 231 at 2. Moreover, here where the Court has previously denied class certification, any relief will not serve a larger swath of the public, but only O'Brien. Accordingly, the Court allows Mastic's motion as to O'Brien's claims under the MUTPA and MFSAA (Counts X and XI).

E.    **Other Claims**

   *1.    Unjust Enrichment Claims*

Mastic and DNA both argue that Plaintiffs' unjust enrichment claims fail as a matter of law because, *inter alia*, Plaintiffs have an adequate remedy of law under Mastic's express warranty, as reflected in Count I of the complaint, and that the parties' relationships are governed by contract, precluding an unjust enrichment claim. Plaintiffs do not oppose Defendants' motions on this issue. D. 291 at 2 n.1. Accordingly, the Court ALLOWS Defendants' motions as to Plaintiffs' unjust enrichment claims (Count IV).

   *2.    Negligence and Negligent Misrepresentation Claims*

Mastic argues that Lynch, Costello and O'Brien's claims for negligence and negligent misrepresentation are barred by the economic loss rule. DNA makes the same argument as to Lynch and O'Brien's negligence claims against it. Plaintiffs do not oppose any of Defendants' arguments regarding these claims (except as to the negligent misrepresentation claim by Pagliaroni which the Court has now dismissed as time-barred). See D. 290 at 2, 291 at 2 n.1. Accordingly, the Court allows Defendants' motions as to Plaintiffs' negligent misrepresentation and negligence claims (Counts V, VI, VII).

F.    **Plaintiffs' Claims for Declaratory and/or Injunctive Relief Fail**

"The Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202 . . . empowers a federal court to grant declaratory relief in a case of actual controversy." Ernst & Young v. Depositors Econ. Protection Corp., 45 F.3d 530, 534 (1st Cir. 1995). "[C]ourts retain substantial discretion in deciding whether to grant declaratory relief." Id. Declaratory relief cannot be obtained where "there is no ongoing legal violation." Mills v. State of Me., 118 F.3d 37, 55 (1st Cir. 1997). "[D]eclaratory judgment is meant to define the legal rights and obligations of the parties in

anticipation of some future conduct, not simply to proclaim liability for a past act." Brown v. Rhode Island, 511 Fed. Appx. 4, 6 (1st Cir. 2013) (per curiam) (quoting Ysais v. New Mexico, 373 Fed. Appx. 863, 866 (10th Cir. 2010)).

Diaz-Fonseca v. Puerto Rico, 451 F.3d 13 (1st Cir. 2006), is instructive here. In that case, the First Circuit vacated a declaratory judgment for abuse of discretion because, *inter alia*, the judgment included items under which the defendant, the Commonwealth of Puerto Rico, was obligated to hire administrative law judges and overhaul their process for evaluating children under the Individuals with Disabilities Education Act, where "no class ha[d] ever been certified, and there [was] no evidence on which such broad relief [could] be justified." Id. at 39. The court elaborated that the declaratory judgment had violated two rules. First, the declarations did not "meet the test that 'the need [for such pronouncements be] clear, not remote or speculative.'" Id. at 41 (alteration in original) (quoting El Dia, Inc. v. Hernandez Colon, 963 F.2d 488, 494 (1st Cir. 1992)). Second, "the declarations violate[d] the usual rule that the scope of declaratory relief cannot exceed the issues raised by the pleadings and supported by the evidence." Id. (citing 10B Wright et al., Federal Practice and Procedure § 2768, at 669 (3d ed. 1998)).

In this case, Plaintiffs' claim for declaratory or injunctive relief seeks a declaration from the Court listing the presence of defects in Oasis decking (parts (a) and (b)), that Defendants knew of these defects and that Mastic's limited express warranty is unenforceable (part (c)), and that Defendants audit, assess and create a protocol to inspect all Oasis decking (parts (d) and (e)). See D. 53, ¶ 256(a)-(e). As to parts (a), (b) and (c) of the requested declaration, these requested declarations are a clear proclamation of liability for a past act. Plaintiffs do not identify any benefit to Plaintiffs' legal rights or influence on Defendants' obligations stemming from these declarations. As to parts (d) and (e), the requested declarations exceed the issues raised by the

27

pleadings and supported by the evidence. After Plaintiffs' motion for class certification was denied, the case and the evidence submitted by the Parties no longer related to Mastic or DNA's entire inventory of sold or manufactured Oasis decking. Rather, the case turned on the evidence relating to each of Plaintiffs' individual Oasis decks, and whether the damage they claimed those decks suffered due to manufacturing defect entitled them to compensatory damages.

Count XIII fares no better when parts (d) and (e) are evaluated as a claim for injunctive relief. A plaintiff seeking a permanent injunction must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006). Plaintiffs have not made any of the requisite showings to support maintaining Count XIII. The injuries Plaintiffs allege, to the extent they survive Defendants' motion on other grounds, are not irreparable and have adequate remedies at law through monetary damages. Furthermore, as explained above, the equities and public interest would both be disserved in maintaining a claim for injunctive relief affecting Defendants' entire business practices when Plaintiffs represent only their individual interests, rather than a certified class. Accordingly, the Court allows Mastic and DNA's motions as to Plaintiffs' claims for declaratory and injunctive relief (Count XIII).

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS IN PART AND DENIES IN PART Mastic's motion for summary judgment, D. 266, and ALLOWS DNA's motions for summary judgment, D. 270, 272, 274, 276. Accordingly, the only counts that remain are Count I (breach of

express warranty claims against Mastic) as to O'Brien, Costello and Lynch, and Count II (breach of implied warranty claim against Mastic) as to Costello.[6]

**So Ordered.**

/s/ Denise J. Casper
United States District Judge

---

[6] Having considered the parties' arguments, the Court DENIES Defendant's motion for sanctions. D. 263. Giving the Court's rulings in this Memorandum & Order, the motion is largely moot. To extent that portions of Count I and II survive, the Court concludes that the sanctions motion, filed in conjunction with Defendants' motions for summary judgment and more than three years after Defendants' counsel provided notice of the purported deficiency, D. 265-22, is untimely, see, e.g., Long v. Howard Univ., 561 F. Supp. 2d 85, 91 (D.D.C. 2008). Furthermore, even if the motion was timely, and the withheld computation of damages was improper, considering that it may be fairly inferred by the delayed filing of this motion that the computation evidence was not necessary for Defendants to defeat class certification or raise colorable arguments with respect to all outstanding claims on summary judgment, the drastic sanction of exclusion would not be warranted. See Esposito v. Home Depot U.S.A., Inc., 590 F.3d 72, 77-81 (1st Cir. 2009). As a related matter, the Court ALLOWS Plaintiffs' motion to supplement its disclosure regarding the computations of damages, D. 280, but only as to the portions of Counts I and II that survived the motions for summary judgment and such supplementation must be done by March 1, 2018.